## CARTER *vs.* BURLEY.

Whether an indorsement of a promissory note may be treated as a bill of exchange, in an action by the indorsee against the indorser—*quere.*

A protest is not competent evidence of the dishonor of an inland bill of exchange.

Bills drawn by inhabitants of one state, upon those of another, are to be regarded as foreign bills ; and where a promissory note, made by a resident of one state, and payable to a person residing in another, is endorsed, if the endorsement can be regarded as a bill, it is to be deemed a foreign bill.

A protest by a notary public, at the place of payment, duly authenticated, is the regular evidence of the dishonor of a foreign bill.

A protest is to be authenticated according to the forms of the place where the demand is made, at the time of making it. If it is by a notary, and under seal, the notarial seal furnishes *prima facie* evidence that it is in due form, and is sufficient to admit the protest in proof; but if not made by a notary, or not under seal, there must be evidence of the official character of the officer, and of the laws of the state or country, showing that it was duly made.

An impression of a notarial seal upon the paper of the protest is a sufficient seal, and it is to be presumed that it was affixed according to the laws of the place where the demand was made, until there is something to impeach it.

Upon the dishonor of a bill or note, when the parties to it reside in different places, it is sufficient if the holder puts a notice into the post-office in season to be transmitted by the mail of the next day; and each endorser may, in like manner, transmit a notice by the mail of the day succeding that on which he receives notice. But if the party receiving notice can not, by the exercise of reasonable diligence, forward notice to a prior party, by the mail of the day following, it will be sufficient if sent by the next mail.

The holder may, if he pleases, forward a notice on the day of the dishonor, and any prior party receiving notice, may transmit a notice on the day he receives one; and should any party do so it will not enlarge the time allowed to any other party.

An agreement by an indorser, when informed of the dishonor of a note, that he would give collateral security for his responsibility, is not *prima facie* evidence of due demand and notice, nor a waiver of his right to require proof of these facts.

Assumpsit against the defendant, as indorser of a promissory note, made by Carr and Lunt, of Philadelphia, on the first of February, 1837, for the sum of $892.04, in eight months, payable to the defendant, or order, and by him indorsed to the plaintiff; alleging a presentment at Philadelphia, October 4, 1837, and notice of non-payment to the defendant.

There were also counts for money had and received, and for money paid.

Upon the trial it appeared that the note in question was indorsed by the defendant to the plaintiff, and had also upon it the endorsement of the plaintiff, and of John Hutchinson; and that in March, 1837, the plaintiff delivered the note, with his indorsement on it, to Geo. H. Gray, of Boston, who received it on account of Hutchinson, and forwarded it to him, in New-York, where he resides.

It further appeared that Gray, as agent of Hutchinson, received the note again on the 8th or 9th of October, inclosed in a letter from Hutchinson, dated October 6th, with a protest, which was offered in evidence, dated at Philadelphia, October 4th, and with notices from the notary to the defendant, and plaintiff, which he immediately delivered at the counting room, to the principal manager of the plaintiff's

business, who put the notice addressed to the defendant into the post-office in Boston on the same day he received it from Gray.

Gray saw the defendant in Boston, on the tenth, and as he believed on the ninth, of said October, and told him, the first time he met him, that Carr and Lunt's note was dishonored, and returned protested for non-payment; that notices of protest had been forwarded to him, one of which was addressed to the defendant, and one to the plaintiff, and that he had left them both at the plaintiff's counting room; and the defendant then agreed to put into the hands of Gray a quantity of hammers, as collateral security for the defendant's responsibility, as indorser of the note.

On the 14th of October, Gray again saw the defendant, who then renewed and confirmed the conversation about leaving the hammers with him, as security as aforesaid.

The defendant contended that there was no evidence of a demand, and that no seasonable notice of the non-payment was given to him.

The plaintiff insisted that if the evidence was not otherwise sufficient, it showed a waiver on the part of the defendant of any right to call for the proof.

A verdict was taken for the plaintiff, by consent, judgment to be rendered thereon, or a new trial granted, or judgment to be entered for the defendant, according to the opinion of this court upon the foregoing case.

*S. D. Bell,* for the defendant. There is here no sufficient evidence of a demand on the maker of the note. The burden is on the plaintiff, and there is no evidence unless the protest is competent. On inland bills no protest is necessary, and it is not evidence. *Chitty on Bills* 499, 500; 6 *Wheat.* 572; 2 *B. & A.* 700; 4 *Camp.* 129. A protest is never necessary upon a promissory note, and if made it is not evidence. 8 *Wheat.* 331, *Nicholls* vs. *Webb; Anthon's N. P.* 1, *Cummings* vs. *Fisher.*

The paper in this case is to be deemed an inland, and not a foreign bill, if it be a bill at all, which is not admitted. If a bill, it is drawn by a citizen of one state on a resident in another. *5 Johns. 75, Miller* vs. *Hackley.* We are aware of a decision in the supreme court of the United States, in which such a bill was held a foreign bill. A bill is deemed inland or foreign at the time drawn. It does not change by indorsement. It is not as to one an inland bill, and to another of the parties to it a foreign bill. If this view is correct, promissory notes, if regarded as bills, must be always held to be inland bills. The maker has the double character of drawer and drawee.

A protest at common law must be under seal. Here was a mere impression upon the paper. It should have been upon wax or wafer. *6 N. H. R.* 150, *Douglass* vs. *Oldham; 2 Mass.* 84, *Pearsall* vs. *Dwight; 5 John.* 239, *Warren* vs. *Lynch; 2 Pick.* 11, *Com'th* vs. *Griffith.* The instrument when brought here must have a seal. If the other party would avail themselves of any law of Pennsylvania, that an impression shall be a seal, that should have been proved.

The defendant was not duly notified of the dishonor. Notice is to be forwarded by the mail of the next day after the dishonor, and by each indorser by the mail of the day after he receives notice. *Chitty on Bills* 515, 517; *2 Barn. & Ald.* 500, *Williams* vs. *Smith; Moody & Malk.* 61, *Geill* vs. *Jeremy; Chitty on Bills* 518, *n.* ; *1 Pick.* 405, *Shed* vs. *Brett; 8 Pick.* 54, *Talbot* vs. *Clark; 2 B. & A.* 496, *Smith* vs. *Williams; 17 Mass.* 454, *Whitwell* vs. *Johnson; 5 Cowen* 307, *Mead* vs. *Engs; 9 Peters* 33, *Bank of Alexandria* vs. *Swann; 6 East* 3, *Darbishere* vs. *Parker.* The burden of proof is on the plaintiff to shew precisely, and not by inference, that this was done. *1 Stark. R.* 314, *Lawson* vs. *Sherwood; 4 Bing.* 715, *Hawkes* vs. *Salter; 1 M. & M.* 129, *Toosey* vs. *Williams; 4 Camp.* 193,

*Hetherington* vs. *Kemp; Chitty* 646. The plaintiff must show the course of the mails, &c. He did not show when notice was put into the post-office at Philadelphia, when it was received at New-York, nor when it was forwarded to Boston. It may be inferred, from the evidence, that Hutchinson received notice before the 6th of October, because the letter he sent to Boston was dated that day. 2 *Camp.* 623, *Arcangelo* vs. *Thompson;* 5 *Bing.* 299, *Abbey* vs. *Lill.* Hutchinson should have notified on the 6th, and it should have been received in Boston on the 7th of October.

It does not appear from the testimony what the notice was which was received. A notary, in giving the notice, does not act in an official character. *Chitty* 646 ; 7 *Bing.* 530, *Solarte* vs. *Palmer;* 4 *B. & C.* 339, *Hartley* vs. *Case;* 2 *Johns. R.* 204, *Morgan* vs. *Van Ingen.*

It has been alleged that the defendant has waived the proof of demand and notice. But the defendant had no knowledge that the plaintiff had failed to give notice, at the conversation relied on. A promise to pay a dishonored note is not binding, unless the plaintiff shows affirmatively that it was made with full knowledge of all the facts. 2 *N. H. R.* 340, *Ladd* vs. *Kelley;* 3 *ditto* 346, *Otis* vs. *Hussey;* 7 *ditto* 271, *Farrington* vs. *Brown;* 1 *Cowen* 397, *Sice* vs. *Cunningham;* 16 *Johns.* 152, *Trimble* vs. *Thorne;* 1 *D. & E.* 712, *Goodall* vs. *Dolley;* 12 *Mass.* 52, *Hopkins* vs. *Liswell;* 4 *Taunt.* 90, *Baxter* vs. *Nichols;* 2 *Mason* 241, *Martin* vs. *Winslow.*

The offer made was not accepted. Nothing was done upon it. A conditional promise, if rejected, or not accepted, does not amount to a waiver. 11 *Johns.* 180, *Agan* vs. *McManus ;* 8 *Johns.* 384, *Crain* vs. *Colwell;* 1 *Cowen* 397 ; *Chitty* 540.

*Bartlett* and *Hutchins,* for the plaintiff. There has been no controversy, recently, that a promissory note, when indorsed, becomes a bill of exchange. As to the question

whether this is to be regarded as an inland or foreign bill, that has been settled by the supreme court of the United States, and the courts of Massachusetts and Maine have followed. The reason exists here; that is, the inconvenience of bringing proof.

We shall then consider the action as founded upon a foreign bill, and a protest is the proper evidence of dishonor.

The protest offered in this case is well enough. A seal by impression is sufficient, and the notary's protest establishes the fact.

The next question is, whether there is sufficient evidence of notice. 5 *Cowen* 303, *Mead & a.* vs. *Engs.* It is not necessary to give notice by the next subsequent mail. The plaintiff shows when notice was received in Boston and forwarded from thence. It was incumbent on the other side to show that it was not due diligence. But the case shows there was due diligence. The notary might have given his notice to the party in Philadelphia. It was sufficient to forward it from that place on the 6th, and from New-York on the 7th.

The defendant has waived any exception as to notice. What he said would not bind him, unless he had notice of the facts; but with that knowledge he is bound. No fact was concealed from him. It is only necessary that he should be informed of the substantial facts. The case states an absolute promise, unqualified and unconditional.

*Bell*, in reply. We do not admit that the notary was entitled to his day to give notice. Putting a note into the hand of an agent, to demand payment, gives no greater right than if the party had demanded it himself.

The diligence of one party is not to avail others. If one lets his day pass, his right is gone.

PARKER, C. J. The original instrument, which has occasioned the existence of this action, is a promissory note,

made by Carr & Lunt, of Philadelphia, and payable to Gordon Burley. But the suit itself is founded upon an indorsement of this note, afterwards made by Burley, to the plaintiff. This indorsement authorized the plaintiff to demand the money, mentioned in the note, of Carr & Lunt, at the time when it became payable, and, upon non-payment by them, to resort to the defendant for the amount, upon giving him due notice of the dishonor. The indorsement, therefore, thus made upon the note, is an engagement of the same nature, and operates, as between these parties, as an indorsement of an accepted bill of exchange. Carr & Lunt, by means of their promise to pay, are the acceptors, and the defendant, who held and undertook to transfer their promise by means of his indorsement, stands in the same situation as the indorser of a bill in the usual form. 4 *D. & E.* 152, *Brown* vs. *Harraden;* 1 *Wendell* 522, *Leonard* vs. *Mason;* 2 *N. H. R.* 159, *Dwight* vs. *Emerson; Chitty on Bills* 180; 6 *Wheaton* 574, *Union Bank* vs. *Hyde.* It is said that every indorsement of a bill may be considered as a new bill, drawn by the indorser on the acceptor. 4 *Mass. R.* 258, *Van-Staphorst* vs. *Pearce;* 2 *Burr.* 674, 676, *Heylin* vs. *Adamson; Story's Conflict of Laws* 261, 262 *note,* 298. An accepted bill of exchange is in theory an assignment to the payee of a debt due from the drawee to the drawer. 5 *Wheaton* 286, *Mandeville* vs. *Welch.* And the indorsement of a promissory note is an assignment of a debt due from the maker to the indorser.

Such being the similarity of operation between the indorsement of promissory notes and the drawing and indorsement of bills of exchange, there would seem to be no sound objection to treating the indorsement of the former as if it was in fact drawn out in form as a bill. An indorsement on a bond, ordering the contents to be paid to a third person, may be so treated. 1 *Bay's R.* 66, *Bay* vs. *Freazer.*

The statute of Ann provided that actions might be maintained upon promissory notes against the makers or indors-

ers, in like manner as in cases of inland bills of exchange; but that provision was enacted principally to enable the holders of such notes to sustain actions upon the instruments themselves, and not to regulate the proof as between the parties. The indorsement of a note might, therefore, well have the character of an inland bill, and be treated as one, if the maker and indorser reside within the same government; or as a foreign bill, in case they are citizens of different governments; in like manner, and under the same circumstances, that a bill in form would be denominated inland or foreign; and, aside from any established rules upon the subject, might be considered as a foreign or inland bill, so far as regards the demand and notice, and the evidence required to sustain an action against the indorser, upon the default of payment by the maker. Mr. Justice Buller says of certain cases cited in *Heylin* vs. *Adamson*, 4 *D. & E.* 154, "they show that the courts of Westminster have thought the analogy between bills of exchange and promissory notes so strong that the rules established with respect to one ought also to prevail as to the other."

In this case the makers or acceptors resided in Pennsylvania, and the defendant, who is promisee and indorser, in this state. Treating it as a bill, it is one drawn by a citizen of one of the United States upon citizens of another state in the Union; and a question has been suggested, whether bills so drawn are to be regarded as foreign or inland. If inland, the evidence of a presentment for payment, and a neglect by Carr & Lunt, it is admitted would be insufficient, a protest being incompetent for that purpose. 1 *Salk.* 131; 6 *Wheat.* 572; *ditto* 146, *Young* vs. *Bryan*; 2 *Barn. & Ald.* 696, 700, *Windle* vs. *Andrews.*

For certain purposes, all the states in the Union form but one government. That government, in its operation, embraces all the states. Its laws, constitutionally enacted, are in force through the whole extent of their territory; and its tribunals of justice exercise a jurisdiction throughout the

limits of the whole Union. It is apparent, therefore, that for most, if not all, the purposes for which that government was formed, and in the exercise of its functions, the United States are properly to be regarded as an entire nation. Within the immediate scope of its action, the states cannot be regarded as foreign to each other. Those purposes, however, are of a limited character, and beyond them the states conduct their internal affairs as independent communities.

The promotion of their commercial prosperity was undoubtedly one of the objects which led to the adoption of the constitution of the United States; but regulations respecting the drawing, negotiation, and presentment of bills of exchange, seem not to be within the purview of that constitution, and these matters have been left to the legislation and regulation of the several states, as if they were in all respects independent governments. Under such circumstances the states may well be regarded, in the consideration of matters of that character, as foreign to each other; and they have been so considered in several cases adjudicated in the courts of the United States, and of individual states. 2 *Peters' Sup. C. R.* 170, *Townsley* vs. *Sumrall; ditto* 586, *Buckner* vs. *Finley; and opinion of Mr. Justice Washington, in Lonsdale* vs. *Brown, ditto* 688, *Appendix No.* II. ; 12 *Pick. R.* 483, *Phœnix Bank* vs. *Hussey. See, also,* 15 *Wendell* 527, *Wells* vs. *Whitehead.*

The indorsement which forms the immediate subject matter of this action, if it was regarded as a bill, would be a foreign bill. In that character a protest by a notary public at the place of payment, if duly authenticated, has long been settled to be the regular evidence of dishonor. 4 *D. & E.* 175 ; 5 *D. & E.* 239, *Gale* vs. *Walsh ;* 2 *Bay's R.* 376, *Payne* vs. *Winn ;* 6 *Wheat.* 574 ; 12 *Pick.* 484 ; 3 *Wend.* 173.

But it has been held by high authority that " no demand of payment or notice of non-payment, by a notary public, is necessary in the case of promissory notes," and that " a pro-

test is, (strictly speaking) evidence in the case of foreign bills of exchange only." 8 *Wheaton* 326, *Nicholls* vs. *Webb*. This perhaps does not necessarily conflict with the view already taken of the subject, where a note is indorsed so that it can be regarded as a foreign bill; and the reasoning in that case, admitting the protest, in connexion with the other evidence, as secondary evidence of the demand, shows that unless the rules of the commercial law forbid the reception of the protest, as evidence of the dishonor, in such case, it may certainly be very convenient to consider the indorsement as a bill, either foreign or domestic, according to the circumstances; and on that ground to admit the protest as competent evidence where it can be regarded as a foreign bill. In Nicholls *vs.* Webb the residence of the parties is not adverted to.

In *City Bank* vs. *Cutter*, 3 *Pick.* 414, also, it is held that "no protest is necessary upon the dishonor of a promissory note, and notarial fees cannot be recovered of the indorser." But in that case the parties, it would seem probable, were all residents in Massachusetts.

It is not necessary, however, to settle this question for the purpose of disposing of this case, as there is another point upon which the case must be sent to a new trial; and as a farther examination of the authorities is desirable, we waive any decision upon it at this time.

It is denied that the protest offered in this case is so authenticated that it can be received, even if a protest is competent evidence. The case finds nothing on this subject; but it is understood from the argument that the protest bears the signature of a person assuming to act as a notary, with the impress of a notarial seal upon the paper, but without any wafer or wax. This it is said cannot be regarded as a seal in our courts.

If the protest is made up according to the laws of Pennsylvania, for that purpose, at the time when the demand should have been made, and the seal can be regarded as a

notarial seal, that must be held sufficient. It cannot be required that it should then have been authenticated with reference to any forms that might be required in making up a protest here. The protest is supposed to be made out at the time of the demand and refusal. If in point of fact it is made after, it is done as if it had been made at the time, and the act is completed as of that time. *Bull. N. P.* 272; 4 *Esp. N. P. R.* 48, *Chaters* vs. *Bell; Bayley on Bills* (*Phillips' & Sewall's ed.*) 170, *note.* But at that time neither the holder or the notary might have any information respecting the residence of prior parties, nor could they know in what court it might be necessary afterwards to bring an action. Nor is there any authority found requiring the notary to make out and authenticate several protests, according to the laws of different states of which different prior parties are inhabitants. Still less can the holder be required to provide an authentication according to the laws of all the governments in which he may possibly have occasion to bring an action afterwards. The protest must be made in the manner, and by the person, prescribed in the place where the bill is payable. *Story's Conflict of Laws* 298. But the protest itself is evidence. The production of the instrument is sufficient evidence of a protest. *Bayley on Bills* 332; *Bull. N. P.* 170; 4 *D. & E.* 175; 8 *Wheaton,* 333; 2 *Peters* 179. Even the memoranda of the notary may be admitted after his decease. 20 *John. R.* 168; 8 *Wheaton* 326; 2 *Wend.* 369; *ditto* 513.

For these reasons we are of opinion that the act of the notary, or other officer, in making a protest, is regularly to be authenticated according to the forms of the place where the demand is made, at the time of making it. But it is proper to make a distinction in admitting the proof. If the protest is by a notary, and under seal, the notarial seal will furnish *prima facie* evidence that it was duly made according to the laws of the place, and be sufficient to admit the protest in proof; but if not made by a notary, or not under

seal, there must be evidence of the official character of the officer, and of the laws of the state or country where it was made, showing that it was duly made according to the laws there existing. 3 *Wendell* 173, *Chanoine* vs. *Fowler.*

In this case the protest is by a notary, under what purports to be an official seal. It is not a mere scrawl, but a distinct impression upon the paper of the protest, showing the character of the notarial seal. Nothing would have been added to its character by wafer or wax ; and as this is not an uncommon mode of affixing official seals, we are of opinion that it is sufficient. It is to be presumed, from the production of the instrument itself, that it was duly affixed, according to the laws of Pennsylvania, until there is something to impeach it. The notarial seal gives the protest faith and credit as *prima facie* evidence, without other proof. Whether a mere scrawl could be regarded here as a sufficient seal to authenticate a protest, without evidence of the official character of the notary, and evidence of the laws of the state, may perhaps be doubted.

But it does not appear in this case that the defendant was duly notified of the dishonor of the note, although it is not improbable he may have been.

Upon this subject the authorities have not been entirely uniform. It has in some instances been submitted to a jury to say whether the notice of dishonor had been given in a reasonable time. 1 *Camp.* 246, *Scott* vs. *Lifford ;* 9 *East* 347, *S. C. ;* 1 *N. H. R.* 142, *Haddock* vs. *Murray.* " But the inconvenient uncertainty which this introduces" has led commercial men and courts to attempt the establishment of a more definite rule. 1 *N. H. R.* 142; 1 *D. & E.* 168 ; 1 *Peters' S. C. R.* 583. In laying down a general rule, where the parties reside in different places, it has been said, that notice should be given as soon " as can conveniently be done," or " as soon as communication is usually had between the places where the respective parties reside," (1 *N. H. R.*

140, 142)—As soon as the party himself receives notice, (3 *Johns. Cas.* 89, *Morgan* vs. *Woodworth*)—By the first post or convenient opportunity—(1 *Bay's R.* 178, *Scarborough* vs. *Harris*)—By the next post, (1 *D. & E.* 168)—By the next post or mail after intelligence of the dishonor, if there is reasonable time to prepare the notice, &c. (5 *Cowen* 303, 308, *Mead* vs. *Engs*; 3 *Wendell* 277, *Sewall* vs. *Russell*)—Meaning "the next convenient, the next practicable post," (6 *East* 9, *Darbishire* vs. *Parker*)—And that the law does not exact of the holder that he shall give the earliest possible notice. It requires of him only an ordinary and reasonable diligence. 18 *John. R.* 240, *Bank of Utica* vs. *Smith*; 5 *Cowen* 305; 3 *Wend.* 277.

It is settled in England that it is not required that notice should be forwarded by the next practicable post, but by the post of the next day. 2 *Barn. & Ald.* 500, *Williams* vs. *Smith*; ditto 501, *Wright* vs. *Shawcross, in note*; 1 *M. & M.* 61, *Geill* vs. *Jeremy*; 15 *East* 291, *Langdale* vs. *Trimmer*; 15 *Mau. & Sel.* 68, *Bray* vs. *Hadwen*. And there seems to be quite a sufficient weight of authority to establish the true rule to be, that notice to a prior party, where the parties live in different places, is sufficient if forwarded by the mail of the day following the dishonor, or that on which an indorser receives due intelligence of it. 2 *Wheaton's R.* 373, *Lenox* vs. *Roberts*; 9 *Peters' R.* 45, *Bank of Alexandria* vs. *Swann*; 2 *Caines' R.* 344, *Jackson* vs. *Richards*; 20 *John. R.* 146, *Robinson* vs. *Ames*; 8 *Pick. R.* 54, *Talbot* vs. *Clark*; 3 *Conn. R.* 495, *Hartford Bank* vs. *Stedman*.

This rule, however, must be qualified by the authorities before cited, so far that if the party receiving a notice can not, by the exercise of reasonable diligence, forward notice to a prior party, by the mail of the day following, it will be sufficient if sent by the next. 4 *Bingham* 715, *Hawkes* vs. *Salter*. In this country, where many of the mails go out at an early hour of the morning, and are sometimes closed at

an early hour of the evening before, it would be impracticable, in some instances, and nearly so in many more, to prepare and forward a notice by the mail of the next day, where notice was received late in the afternoon or in the evening.

It has been further held, that where there are two mails on the same day, if the party put the notice into the post-office in season for either, that is sufficient. 17 *Mass. R.* 454, *Whitwell* vs. *Johnson; and see* 2 *Camp.* 208, *Smith* vs. *Mullet.* But in 1 *Pick.* 405, it is said it is not necessary that notice should be given until " the next mail after the day on which the demand is made." It is probably not important in this case to express any opinion upon this last point. If each party through whose hands notice was forwarded to the defendant, availed himself of his right to give notice by the mail of the next day after the dishonor, or after he himself received notice, it is not improbable that the notice was duly transmitted.

But neither the holder, or any prior party receiving notice, is required to omit forwarding notice until the mail of the next day ; but the holder may, at his pleasure, forward a notice on the day of the dishonor, if the course of the mail will admit of it ; and an indorser may in like manner forward a notice on the same day he receives one. 3 *Camp.* 193, *Burbridge* vs. *Manners;* 1 *Pick.* 401, *Shedd* vs. *Brett;* 1 *John. Cas.* 328, *Corp* vs. *McComb;* 6 *Wheat.* 104, *Lindenberger* vs. *Beall.* And should any party do so, this will not enlarge the time allowed to any other party, nor relieve him from the operation of the rule requiring notice to be sent by the mail of the next day after receiving one. 2 *Camp.* 208 ; 4 *Barn. & Ald.* 451, *Turner* vs. *Leech.*

There is no evidence in this case of the course of the mails, nor does it appear whether there was a party at Philadelphia, nor at what time, or in what manner notice was sent from that place, nor when it was received by Hutchinson, in New-York. The objection on this part of the case

is well taken, and for this reason the case must be sent to a new trial.

If due measures have not been taken to charge the defendant as indorser, the action cannot be sustained. There is here no sufficient evidence to charge the defendant, on the ground that he waived his rights by a subsequent promise. It does not appear that he had any knowledge of laches, if there had been any. 2 *N. H. R.* 340, *Ladd* vs. *Kinney;* 3 *N. H. R.* 346, *Otis* vs. *Hussey;* 7 *N. H. R.* 271, *Farrington* vs. *Brown.*

Under certain circumstances a promise to pay has been held to be *prima facie* evidence of demand and notice. 7 *East* 231, *Lundie* vs. *Robertson;* 8 *Pick.* 1, *Martin* vs. *Ingersoll;* 3 *John. R.* 71, *Piersons* vs. *Hooker. But see* 11 *John. R.* 180, *Agan* vs. *McManus;* 16 *John.* 152, *Trimble* vs. *Thorne.* That principle, however, if correct, cannot avail to sustain this action, on the evidence before us. The defendant agreed to put into the hands of Gray a quantity of hammers, as collateral security for his responsibility as indorser; but this is not a promise to pay; and if he had performed that agreement, he would still have been at liberty to contest his liability. It must be construed, therefore, as no more than an agreement to give security for any liability legally resting upon him as indorser, and this is not sufficient. 6 *Wend.* 661, *Jones* vs. *Savage, and cases cited.*

Furthermore, Gray does not appear to have been the agent of the plaintiff. He was the agent of Hutchinson; and a promise to pay, made to him, would have been a promise to Hutchinson, and not to the plaintiff. This might perhaps be urged as an additional reason why the plaintiff is not entitled to treat what was said to Gray, as a waiver, by the defendant, of any right to require proof in an action in favor of the plaintiff.

*New trial granted.*