## Manchester Bank *v.* Fellows.

A parol retainer of an attorney is sufficient to authorize him to commence a suit.

It is not necessary for a member of the bar to show authority to commence and manage a suit, whether the action be by an individual or a corporation, unless the authority is called for; and even when called for, the declaration, by the attorney, that he was employed by the plaintiff, or his agent, who, he believed, was duly authorized to employ him, will ordinarily be sufficient.

A defendant may show that a suit is prosecuted without the consent of the plaintiff on the record, and if it shall appear that he is the real and not the nominal plaintiff, the action will be dismissed for the want of a plaintiff in court.

Upon the dishonor of a bill or note, when the parties to it reside in different places, it is sufficient if the holder puts a notice to the indorser into the post office, in season to be transmitted by the mail of the next day; and each indorser may, in like manner, transmit a notice to his prior indorser, by the mail of the day succeeding that on which he receives notice. But if the party receiving notice cannot, by the exercise of reasonable diligence, forward notice to a prior party by the mail of the day following, it will be sufficient, if sent by the next mail.

The holder of a bill of exchange or promissory note may, if he pleases, forward a notice on the day of its dishonor; and any prior party, receiving notice, may transmit a notice on the day he receives one; and should any party do so, it will not enlarge the time allowed to any other party.

Where the residence of the holder and that of the party to be notified is in the same town or city, it is not sufficient to put a notice of the dishonor into the post office; personal notice must be given, or the notice must be left at the residence or place of business of the party to be notified.

If the parties reside in the same place, and notice be put into the post office, and it be shown to have been actually received in due season, it would *seem to* be sufficient.

The bank at which a bill or note is made payable or left for collection, although having no interest in it, and a notary having it, as agent of the owner, for the purpose of making demand and protest, are to be regarded as *holders* within the meaning of the rule requiring notices to be personal, or to be sent through the mail.

Where a draft, dated at Boston and drawn and accepted by parties at Boston, was made payable to the order of F., residing at Manchester, in this State, and was by him indorsed to a bank at Manchester, and by the bank also indorsed and sent to Boston, and a notary there, at the maturity of the draft, made a demand upon the acceptor, and, upon refusal, gave notice of the non-payment to the drawer, and on the same day put into the post office, at Boston, a written notice of the non-payment, directed to the cashier of the bank

Manchester Bank *v.* Fellows.

at Manchester, and enclosed a similar notice for F., which were duly received by the cashier on the next day, and he thereupon directed the notice enclosed for F. to him, and replaced it in the post office at Manchester—*held*, that as the notice came from the notary at Boston, the mode adopted for transmitting it was sufficient.

There must be an existing, absolute liability, at the commencement of a suit against an indorser of a bill of exchange, in order to support the action; and that liability is not complete until notice of non-payment is given, or due diligence used to give the notice, such as, in law, amounts to notice.

A demand may be made upon the acceptor on the third day of grace, and upon refusal to pay, notice may be given to the indorser of the non-payment on the same day, and after such notice a suit may immediately be commenced against the indorser.

But if a suit is commenced against the indorser, on the third day of grace, the plaintiff, to sustain his suit, must prove that it was done after notice given. If the parties reside in the same place, such notice is proved by showing it to be personal, or left at the house or place of business of the indorser; if they reside in different places, proof is made by showing the notice duly directed and deposited in the post office.

ASSUMPSIT, on a general count for goods sold, money lent and paid, money had and received, &c.

The specification under this count was of a draft, dated at Boston, Massachusetts, August 20th, 1851, drawn by Montgomery & Co., on one Kimball, for $1,200, payable to the order of the defendant in thirty days, and by him indorsed and transferred to the plaintiffs.

Montgomery & Co. and Kimball resided in Boston, and the defendant in Manchester, in this State, where the plaintiffs also are located.

The plaintiffs' writ was dated September 22d, 1851. No evidence was offered to show at what particular time on said day the action was commenced, nor to show that it was commenced by any authority from the officers of the bank, or that they have ever assented to the suit.

From the evidence offered, it appeared that on the 22d day of September, a notary public at Boston duly presented the draft to Kimball, by whom it had been accepted, for payment; and payment being refused, he, on the same day, gave verbal notice of the non-payment to the drawers, and

also put into the post office a written notice thereof in due form, directed to the cashier of this bank, by whom the draft had been indorsed after the defendant, and enclosed a similar notice for the defendant; that the same was received by the cashier on the next day, the 23d, and he, on the same day, directed the notice enclosed for the defendant to him, and put it into the post office in Manchester, at which the defendant received his letters, though residing about four miles therefrom. No other evidence was offered tending to show notice to the defendant of the non-payment of the draft.

A verdict was thereupon taken by consent for the defendant, subject to the opinion of this court on the foregoing case.

*Morrison & Fitch*, for the plaintiffs.

It is not necessary to show any authority or assent of the officers of the bank, in order to maintain this suit. Such authority and assent are presumed. *Eastman* v. *Coos Bank*, 1 N. H. Rep. 23; *Spear & a.* v. *Ladd*, 11 Mass. Rep. 94; Howe's Prac. 31.

It is well settled that an indorsee of a bill of exchange or negotiable promissory note, may maintain an action for money had and received against any prior party or indorser. *Ellsworth* v. *Brewer*, 11 Pick. 315; *State Bank* v. *Hurd*, 12 Mass. Rep. 172; *Tenny* v. *Sanborn*, 5 N. H. Rep. 557; *Edgerton* v. *Brackett*, 11 N. H. Rep. 218; *Dana* v. *Underwood*, 19 Pick. 99.

The notice to Fellows, coming as it did from the notary in Boston, was sufficient. *Warren* v. *Gilman*, 5 Shepl. 360; *Bank of Columbia* v. *Lawrence*, 1 Peters, 578; 1 Am. Lead. Cases 402.

The suit was not prematurely brought. It is well settled that every indorser stands in the same position as the drawer, with the same rights and liabilities; and it is, also, well settled that the drawee is not bound, in case of non-

acceptance, to wait, but may have recourse immediately to the drawer. 4 Esp. 268; 3 East 481 ; Doug. 54; Chitty on Bills 183.

An action was maintained against the indorser, which was commenced on the same day that the note became due, but after the notice was put into the post office, and in which the writ was served before the notice could be received by the course of mail. *Shedd* v. *Brett*, 1 Pick. 401 ; *Greely* v. *Thurston*, 4 Greenl. 479 ; *Stanton* v. *Blossom*, 14 Mass. Rep. 116.

The deposit of a letter in the post office, properly directed and in proper season, is sufficient to charge the indorser, without proof, of its having been actually received, and a right of action accrues, without waiting for it to reach its destination. *Bell* v. *The Hagerstown Bank*, 7 Gill 216.

If the putting the notice into the post office was legal notice, it was given before the commencement of this suit, and so the suit is well brought. *Shedd* v. *Brett*, 1 Pick. 401.

The notice, coming as it did from the notary in Boston, and being by him seasonably put into the post office, was using due diligence, and was sufficient. *New England Bank* v. *Lewis*, 2 Pick. 125.

*D. & D. J. Clark*, for the defendant.

We say that the verdict for the defendant was right,

I. Because no authority was shown from the bank to any one to commence the suit, or to prosecute it, nor any assent given to the proceeding.

The general issue admits the existence of the corporation, but it does not imply any authority to any one to maintain this suit, nor any vote of the corporation for that purpose. Some power or authority should have been shown for that purpose. It does not appear that any officer of the bank directed it.

II. Because the suit was prematurely brought. It was premature in being commenced on the 22d day of Septem-

ber.   The draft fell due on that day, and the acceptor was entitled to the *whole* of the day to pay it in.   The general rule is, that where a party is bound to pay money on a certain day, he has until the close of the day in which to do it.   Chitty on Bills 365.

It is said that a different rule has been established in regard to foreign bills; but this was an inland bill.   Both the drawer and drawee lived in Boston, and no good reason is perceived why the acceptor should not be allowed the whole of the last day to make payment.   His undertaking was to pay thirty days after date.   He was not allowed all that time.

We say, again, that the suit was premature, because it was commenced and the demand made, both on the same day; and it does not appear which was first, the demand or the commencement of the suit.   It should be shown that the demand was before the commencement of the action, because the indorser is not liable, except in particular cases, until demand made.   It is just as necessary to show that the demand was made before the suit, as it is to show any demand at all.

The suit was also premature in being commenced before notice to the indorser.   The suit was commenced on the 22d of September, and the cashier of the bank did not put the notice to the defendant into the post office until the 23d.   This the case finds, and so our statement is made out.

III.   The verdict was also right, because the notice to the defendant was entirely insufficient.   It should have been personal, or left at the defendant's place of business, and should not have been given through the post office.   Both parties resided in the same town.   The defendant lived four miles from the office.   Story on Prom. Notes, § 322; *Bell* v. *Hagerstown Bank*, 7 Gill 216; *Ireland* v. *Kips*, 10 Johns. 501.

A question may arise, from whom came the notice to Fellows?—from the bank or the notary?   The parties—

the holder of the paper and the party to be charged—were in the same town. If the notice came from the notary, then he should have sent it direct to Fellows, and not round through the cashier. If it came from the bank, then it should have been personal, not through the post office.

EASTMAN, J. This suit was brought by the Manchester bank, as indorsees, against the defendant as indorser, of a draft for 1,200; and the questions raised by the case are, whether due and legal notice of the non-payment of the draft has been given to the defendant, so as to charge him as indorser, and whether the suit was not prematurely commenced.

Preliminary to these questions, however, which go to the merits of the action, another question is raised, which is, that no evidence was offered to show that the action was commenced by any authority from the officers of the bank, or that they have ever assented to the suit.

Formerly, attorneys were required to be appointed by warrant, and to file their powers in court; but that practice has long since been disused, and a mere parol retainer is sufficient. And when an action is commenced by a regular responsible attorney, the presumption is that it is done by due authority of the plaintiff. It is not necessary to show authority, whether the suit be by an individual or a corporation, in order to the progress of the suit, unless it is called for by the defendant. Even when called for, the declaration by the attorney that he was employed by the plaintiff, or his agent, who, he believed, was duly authorized to employ him, will ordinarily be deemed sufficient. A defendant may, however, show that the suit is prosecuted without the consent of the plaintiff on the record, and if it shall appear that he is the real and not the nominal plaintiff, the action will be dismissed for the want of a plaintiff in court. If he is the nominal plaintiff only, the suit would of course proceed.

Manchester Bank v. Fellows.

The fact, then, that it was not shown upon the trial that the suit was commenced by the authority of the bank, or that the officers assented to it, cannot avail. It was not necessary to show it until called for, and no call of the kind appears to have been made.

We come now to the consideration of the fundamental questions raised by the case. And first, was the notice upon the defendant of the non-payment of the draft sufficient to charge him?

As a general rule, in order to charge an indorser of a draft, acceptance, bill of exchange, or promissory note, a demand upon the maker or acceptor, at the maturity of the paper, must be shown, and due notice upon the indorser. To this rule there are some exceptions, growing out of the conduct and circumstances of the parties, but which need not be stated at this time, as the case before us does not require it.

This draft was dated at Boston, August 20th, 1851, and was payable to the order of the defendant in thirty days. The last day of grace was, consequently, the 22d day of September, the day of the date being excluded in the computation. On that day, a notary public, at Boston, duly presented the draft to Kimball, the drawee, by whom it had been accepted, for payment; and payment being refused, he, on the same day, gave verbal notice of the non-payment to the drawers, Montgomery & Co., who also resided in Boston, and likewise put into the post office a written notice thereof in due form, directed to the cashier of this bank, the plaintiffs, by whom the draft had been indorsed, after the defendant, and enclosed a similar notice for the defendant. These were received by the cashier on the next day, the 23d, and he, on the same day, directed the notice enclosed for the defendant, to him, and put it into the post office in Manchester, at which the defendant received his letters, though residing about four miles therefrom, in Manchester.

Was this a legal notice to Fellows, the defendant, of the non-payment of the bill?

The draft had been indorsed by Fellows, who was the payee, to the plaintiffs, and by them also indorsed, it does not appear to whom, but probably to some bank in Boston, for the purposes of collection; or the money may have been advanced to the plaintiffs at Boston. The bill was made and held at Boston, and payment was there regularly demanded by the drawee, and notice of non-payment given to the drawers. This being done, the legal course then to be taken by the notary—the holder and indorsers residing in different towns—was to send notice of the non-payment through the mail, to the indorsers. Probably the notary was not acquainted with the residence of Fellows, and so made out a notice to the bank, and likewise one for Fellows, and sent them both to the cashier of the bank. This was done on the 22d, the third day of grace, after demand and refusal, and, according to the authorities was, so far as the bank was concerned, the proper time and manner in which to give the notice so as to charge the bank.

Upon the dishonor of a bill or note, where the parties to it reside in different places, it is sufficient if the holder puts a notice to the indorser into the post office, in season to be transmitted by the mail of the next day; and each indorser may, in like manner, transmit a notice to his prior indorser, by the mail of the day succeeding that on which he receives notice. But if the party receiving notice cannot, by the exercise of reasonable diligence, forward notice to a prior party by the mail of the day following, it will be sufficient if sent by the next mail. *Carter* v. *Burley*, 9 N. H. Rep. 558; *Lenox* v. *Roberts*, 2 Wheat. 273; *Robinson* v. *Ames*, 20 Johns. 146; *Talbot* v. *Clark*, 8 Pick. 84; *Hartford Bank* v. *Stedman*, 3 Conn. Rep. 495; *Ohio Life and Trust Company* v. *Mc Cagne*, 18 Ohio Rep. 54.

And the holder may, if he pleases, forward a notice on the day of the dishonor; and any prior party receiving no-

---

tice, may transmit a notice on the day he receives one; and should any party do so, it will not enlarge the time allowed to any other party. *Carter* v. *Burley*, 9 N. H. Rep. 558; *Smith* v. *Little*, 10 N. H. Rep. 526; *Bank of Alexandria* v. *Swann*, 9 Peters 33; Bailey on Bills 171; *Burbridge* v. *Manners*, 3 Camp. 193; *Greeley* v. *Thurston*, 4 Greenl. 479; *Shedd* v. *Brett*, 1 Pick. 401; 6 Wheat. Rep. 102.

Where notes and bills are payable at a bank, the common practice, with many, is to make a demand on the last day of grace, and if payment is not made, and the parties reside in the same place with the bank, to notify the indorsers after bank hours, either personally or by leaving a notice at their residence or place of business, and if the indorsers reside in other towns, to deposit a notice after bank hours, in the post office, duly directed; and this, we think, is the proper rule upon the subject, where the paper is payable at a bank. The rule, where no particular place of payment is fixed by the bill, has been sufficiently indicated.

The notice, then, to these plaintiffs was legally given, so as to bind them to the holder, if the draft had been cashed for the plaintiffs; but was it sufficient to charge the defendant? According to the authorities which we have cited, and which we regard as good law, the notice was no doubt deposited in the post office in Boston in time, but the authorities are not so numerous or distinct in regard to the correct rule to be adopted after the notice reached Manchester.

Where the residence of the holder and that of the party to be notified is in the same town or city, it is not sufficient to put a notice into the post office; personal notice must be given, or the notice must be left at his residence or place of business. *Green* v. *Darling*, 3 Shepl. 141; *Smedes* v. *Utica Bank*, 20 Johns. 372; *Shepherd* v. *Hall*, 1 Conn. Rep. 429; *Bowling* v. *Harrison*, 6 Howard's U. S. Rep. 248; *Hyslop* v. *Jones*, 3 McLean 96; *Foster* v. *Sineath*, 2 Richardson 338.

But if it should be shown that a notice, put into the post

office where the parties were so situated, was actually received in due time, it would *seem* to be sufficient. *Hyslop* v. *Jones,* 3 McLean 96; *Foster* v. *Sineath,* 2 Richardson 338; *Hill* v. *Norvell,* 3 McLean 383.

It becomes important, then, to determine who is the holder of the bill at the time notice is given; since if the holder and party to be notified are residents of different towns, it may be given through the mail; but if residents of the same town, it should be done, as we have seen, by personal notice, or by being left at the residence or place of business of the party.

In *Bowling* v. *Harrison,* 6 Howard's U. S. Rep. 248, it was held that the bank at which a note is made payable, and holding the note for collection, and the notary, having it as agent of the owner, for the purpose of making demand and protest, are " holders " within the meaning of the rule that where the holder and indorser reside in the same place, personal notice to the indorser of the dishonor of the note, or written notice left at his dwelling-house, is necessary to bind them.

So in *Freeman's Bank* v. *Perkins,* 18 Maine Rep. 292, it was decided that where an indorsed bill is sent to a bank for collection, although the bank has no interest in it, yet, for the purposes of making a demand and of transmitting notices, they are to be considered the real holders.

To the same effect are *Mead* v. *Engs,* 5 Cowen 308; *Warren* v. *Gilman,* 5 Shepl. 360; *Ohio Life and Trust Co.* v. *McCague,* 18 Ohio Rep. 54. And we see no reason to question the correctness of these decisions. The object of notice is to inform the indorser that the bill has been dishonored, and that he must govern himself accordingly. The bill may have passed through several hands, and it is not material for the party to know who owns it, but that it has not been paid. It may be necessary to charge several parties or indorsers, and the most practicable mode appears to be that the notices shall come from the last holder, what-

ever may be the object of its being with him, whether as owner or agent, for the purpose of giving the notices.

The draft in suit was, therefore, held in Boston, and the notice to the defendant would properly come to him from that city through the mail. Still, the question recurs, could it be legally sent by the notary to the cashier of the plaintiffs' bank, in the manner in which it was, and be by him directed and put into the post office, so as to charge the defendant? If it were the plaintiffs who were giving the notice, at Manchester, (as we have seen they might have done after notice to them,) it is clear that it could not be so done, because they reside in the same city. But that was not the case. It was the holder at Boston who was giving the notice, and he undoubtedly directed it according to his best information. The cashier, at Manchester, on taking the notice from the office, made no alteration in it. He simply completed the direction, and re-placed it in the post office. The notice was thus ready for the defendant in the post office at Manchester, properly directed, at the same time and in the same manner that it would have been had the direction been completed at Boston. And we think this was sufficient. The notice came from the notary at Boston, and whatever the cashier did was done as the agent of the notary.

The case of *Warren v. Gilman*, 5 Shepl. 360, appears to have been very near, if not exactly, parallel in its facts with the one before us, and the notice was there held to be sufficient. In that case a bill was indorsed to a bank in Bangor, and by that bank indorsed and transmitted to a bank in Boston for collection; and, by direction of the latter bank was duly presented there for payment by a notary, and notices thereof and of non-payment were immediately made out by him to all the prior parties, and transmitted by the first mail to the cashier of the Bangor bank, who took them from the post office on the morning of their arrival, and directed one to the indorser, then a resident of that city, and

immediately replaced it in the post office.   It was held, that as the notice came from the notary in Boston, this mode of transmitting it was sufficient.

It would, perhaps, be difficult to distinguish that case from this.   The learned Chief Justice *Weston*, in the course of the opinion delivered in that case, remarked, that the notice coming from the notary, the post office was a proper channel of communication; and that " whatever strictness of construction, on the question of notice, may have obtained upon some points, it appears to us that the notice to the defendant is sufficiently made out, by proving, that having been prepared and duly forwarded by the notary, it was ready for him, properly directed, at the post office in Bangor, on the morning of the fifth of August."

But the other objection to the plaintiffs' right of recovery, which is, that the suit was prematurely brought, must be sustained.

The general rule with respect to the time allowed for the payment of money when a day certain is appointed, is, that the party bound has till the last moment of the day in which to pay it.  *Hudson* v. *Barton*, 1 Rol. 189; 3 Bos. & Pul. 602; 1 Saund. 288, n. 17; *Leftley* v. *Mills*, 4 Term. 173; *Randolph* v. *Cook*, 2 Port. 206; *Osborne* v. *Moncure*, 3 Wend. 170.

In the two last cases, it was held that the maker of a note cannot be sued on the day on which it becomes due.   But a contrary doctrine is recognized in other cases, where it is held that a suit may be instituted against the maker on the third day of grace.   *Greeley* v. *Thurston*, 4 Greenl. 479; *Wilson* v. *Williman*, 1 Nott & McCord, 440; *Leftley* v. *Mills*, 4 Term, 170; Chitty on Bills, 285.   And the general rule, which prevails in ordinary contracts, in regard to the party's having the whole day in which to make payment, is said not to exist in its application to negotiable paper. Chitty on Bills, 285.

But whatever difference of opinion may be found to exist

among the authorities, we think the true rule to be this, that a party is bound to pay just according to his contract. Now what is the contract of an indorser of a bill of exchange or promissory note? It is this; that a demand being made upon the acceptor or maker, as the case may be, on the third day of grace, the day of payment, and upon payment not being made, he will himself pay the bill upon being duly notified of the non-payment. This is his contract; and when it is shown to be broken, an action can be sustained against him, but not before.

The promise of an indorser is only conditional in the first instance. There must be an existing, absolute liability, in order to support an action against him, and that liability is not complete until notice of non-payment is given, or due diligence used to give the notice, which in law amounts to notice. A plaintiff in his writ alleges a demand on the maker, with refusal of payment, and a notice to the indorser that the bill has been dishonored; and the notice is a material allegation as it respects the indorser, and must be proved. A suit cannot be sustained against him until enough has been done to make him absolutely liable. *New England Bank* v. *Lewis*, 2 Pick. 125; *Green* v. *Darling*, 3 Shepl. 139.

But if a demand is made on the third day of grace, and the acceptor refuses or neglects payment, and legal notice of the demand and refusal is given to the indorser, his liability becomes fixed; because such is his contract.

We have seen that after the demand is made notice is properly given on the third day of grace. The acceptor contracts to pay on that day, but on being requested refuses to fulfil his contract; and notice may then be immediately given to the indorser of the delinquency. This is all that the contract requires; and a suit may then be commenced against the indorser.

We have seen, also, that where the holder and indorser reside in the same place, the notice must be personal, or left

at the residence or place of business of the indorser. But where they reside in different places, all that is required is, that notice be seasonably deposited in the post office, duly directed. The party is not required to wait till the notice is received. Were this so, a cause of action might never arise, for the notice might never be received. The notice must go at the risk of the indorser, and the time of the reception of the notice must also be at his risk. The duty of the holder is fulfilled when the notice is properly deposited in the post office. A different rule would greatly embarrass all dealings in negotiable paper. *Saunderson* v. *Judge*, 2 H. Blk. 509; *Parker* v. *Gordon*, 7 East, 385; 4 Term, 170; Chitty on Bills, 285; *Shed* v. *Brett*, 1 Pick. 401; *Flint* v. *Rogers*, 3 Shepl. 67; *Greeley* v. *Thurston*, 4 Greenl. 479; *New England Bank* v. *Lewis*, 2 Pick. 128.

As soon, then, as the notice has been given, where the parties reside in the same place, or deposited in the post office, where they reside in different places, after demand duly made and refusal on the third day of grace, a suit may be commenced against the indorser. *Shed* v. *Brett*, 1 Pick. 401; *Greeley* v. *Thurston*, 4 Greenl. 479; *New England Bank* v. *Lewis*, 2 Pick. 128. The plaintiff can then prove all the material allegations in his declaration; and when he does that, he may maintain his suit; but not before.

If the suit is commenced a day after the time that notice is given, or at any future time after notice, the proof is readily made, because where the notice is proved it shows for itself to have been before suit; but where, as in this case, the suit is instituted on the day of the notice, no such conclusion is apparent. The evidence does not show that the notice was given before the suit was commenced, and the court cannot presume it. And in all such cases the plaintiffs must prove that the demand and notice were before the suits were brought, otherwise it does not appear that they have a cause of action. *New England Bank* v. *Lewis*, 2 Pick. 125.

The plaintiffs in this case having produced no evidence showing that the notice was put into the post office at Boston before the writ was served, it does not appear that a cause of action existed at the time of the commencement of the suit and the action necessarily fails.

Entertaining these views of the case, as it stands, there must of course be,

*Judgment on the verdict.*