MILES G. DOBBINS, plaintiff in error, *vs.* CHAS. L. DUPREE, defendant in error.

1. The verdict in this case is not so contrary to the evidence as to shock the moral sense or show manifest prejudice, corruption or mistake by the jury, nor does it violate any rule of law.
2. Though an attorney who appears and confesses judgment for a suitor is, *prima facie*, to be taken as having been retained by the suitor, yet, if the fact be otherwise, the Court will, upon proof to that effect, set aside the judgment.

Motion to set aside confession of judgment. Decided by Judge GREEN. Spalding Superior Court. February Term, 1869.

See this case in 36th Ga. R., 108. When it was called for re-trial, counsel for Dobbins moved to dismiss the motion to vacate the judgment upon the ground that, pending this motion, Dupree had been adjudged a bankrupt and had an assignee in bankruptcy duly appointed. These statements were proved by the record from the proper offices. The Court overruled the motion to dismiss and ordered that the trial proceed. The evidence produced in this case before, was

reproduced; there was some variation in the words of the witnesses, and also some additional testimony. For so much of this as is material to an understanding of the opinions, see them.

The Court charged the jury, 1st. That the employment of an attorney-at-law, by a party, in all his cases, does not authorize the attorney to acknowledge service of the suits; the authority to acknowledge service must be specially given; it may be a general authority to acknowledge service in all suits or a special authority in particular suits. 2d. If Dupree had notice of the suit and afterwards, Cook, as attorney, under his authority, either special or general, confessed a judgment for him, Dupree is bound by it.

He was requested to charge that, though the attorney was not duly authorized to acknowledge service and confess judgment, yet if the same was done and the defendant admits that all the defense he had against the note was usury reserved in the contract by the plaintiff in the judgment sought to be set aside, who has, according to the evidence, remitted and discharged from said judgment all the usury included therein, the jury should find in favor of Dobbins. The Court refused so to charge. He further charged that, if Dupree had notice of this judgment in 1862 and 1863, and took no steps to vacate or set it aside until 1866, such conduct may amount to an acquiescence in and ratification of said judgment, and the jury may find for Dobbins, as a party may be bound by the act of an assumed agent either by ratification or by silence, according to the circumstances of the case. The jury found for Dupree, vacating the judgment. Dobbins' counsel moved for a new trial, upon the ground that the Court erred in not dismissing the motion, because of Dupree's bankruptcy; that the verdict is contrary to the weight of the evidence; that the charge of the Court first stated was erroneous; that the verdict was contrary to the charge of the Court as to acquiescence after notice of the judgment, and that the refusal to charge as requested was error. The Judge refused a new trial, and upon this error is assigned.

Dobbins *vs.* Dupree.

Speer & Beck, Boynton & Dismuke, for plaintiff in error, cited this case in 36th Ga. R., 108 ; Denton vs. Noyes, 6th John. R. ; 1 Bac. Abridg., 486 : 7th Pick R., 137 ; 6th Cowen R., 388 ; 7 Cowen R., 251 ; 6 Wend. R., 571 ; 1 Salkel, 86 ; Comyn's Dig., 7 ; 1. Keble, 89 ; 1 Breese, 260 ; 7 H. & J., 275 ; 5 do., 478 ; 1 Tyler, 364 ; 2 H. & J., 374 ; 2 Yates, 546.

Peeples & Stewart, for defendant in error, as to the bankruptcy, cited James' Bankrupt L., 63–7–9 ; 2 Barb. Ch. R., 596 ; 11 Foster's N. H. R., 542 ; Smith vs. Lawton, decided at this term ; there is evidence enough : 4th Ga. R., 360 ; pt. 2d. Ga. Decisions, 38 ; Shumate vs. Parsons, 37th Ga. R., 102 ; as to acknowledgment and confession unauthorized : Irwin's Code, 3264 ; 13th Ga. R., 217 ; 16th do., 194 ; 17th do., 67 ; Cobb's N. Dig. 471.

McCay, J.

This was a motion to set aside a judgment in favor of Dobbins vs. Dupree, and L. T. Doyal, obtained in November, 1861. The suit was on a note of Doyal, to which Dupree was security. The motion was by Dupree, and was based on the ground that he had never been served and had no notice of the suit. It appeared by the entries on the declaration that no process had ever issued, nor had there been any service upon either party by the sheriff. There was an entry on the writ of waiver of process and acknowledgment of service, signed April 30th, 1861, by "Doyal & Cook, defendant's attorneys." There was also a confession of judgment signed in the same way at November Term 1861. It was admitted that four hundred dollars of the debt was usury. No effort had been made to enforce the *fi. fa.* against Dupree until a short time before the motion to set aside was made, although in 1862 the sheriff had applied to Doyal for the costs.

Dupree was himself a witness, and denied positively that he ever knew of the existence of the suit, until a short time

before the motion was made. He also swore that he had never employed Doyal & Cook as his attorneys in the case, or conversed with them, or either of them, on the subject. Dobbins swore that he had told Dupree he was going to sue, and that Dupree desired suit to be brought. Dobbins also swore that, after the judgment, during the war, he had spoken to Dupree about the *judgment* and the payment of it. This evidence, so far as it used the word judgment, was at the second trial, and Dobbins in the first trial had said he had spoken of the *debt.* He said, however, that his attention had not, at the first trial, been called to the *judgment.*

It appeared from the evidence that Doyal went into the Confederate army on the 20th of April, 1861; that in the fall of 1860 he had taken into partnership, as a lawyer, a young man, Mr. V. Cook; that when he left he had told Cook that if any suits were brought against him to acknowledge service. Doyal stated, also, that he did not expect to be sued in this case, and that Dupree had never given him authority to acknowledge service. Doyal also stated that he had generally been Dupree's lawyer. It was in proof that within a year or two before this suit was brought, several suits were pending, to which Dupree was a party, and that Doyal was his attorney, and the record showed that in these cases, after Cook came into partnership with Doyal, the firm name was signed to the papers, though there was no evidence that Dupree knew of this latter fact, and he denied, on oath, that he did. There were various other points of testimony, the object of which was to show that Cook had acted as attorney for Dupree in several matters, and that they were on terms of familiarity. The acknowledgement of service, signed "Doyal & Cook," was in Cook's hand-writing, and was dated after Doyal left for Virginia. Cook's interrogatories were taken. He said he had no recollection of the transaction. If the signature was in his handwriting, he had no doubt he had authority from the parties to do as he did—he would not otherwise have done so. He had no recollection of ever having any communication with Dupree on the subject. Doyal had told him, when he left, to acknowl-

edge service for him if he was sued. The case went to the jury, who set aside the judgment, and that verdict came to this Court in June, 1867, for review. This Court set aside the verdict as contrary to the evidence, upon condition that Dobbins should remit the usury.

The case was tried again at February term, 1869, of Spalding Superior Court, and the jury again found for Dupree, and that verdict is now before us for review as contrary to the testimony. Very little new evidence was adduced, except a second set of interrogatories of Cook. Attached to that set was the original writ. He says that the acknowledgment is in his handwriting, and he does not believe he would have so acknowledged unless he had understood he had authority from the parties, though he might have done so from instructions given him by Colonel Doyal when he left for the army, who told him he did not want his wife annoyed, and if any suits were brought against him to acknowledge service. He had no recollection of ever talking with Dupree before or during the suit on the subject. On being asked what he meant by having authority, or by understanding he had authority, and if he meant any thing more than the authority given him by Doyal, he answered as follows: "He meant he thought he had authority, but he might have acted on Doyal's instructions alone, as neither at the time of the taking of his first interrogatories, nor now, he cannot recollect that Dupree ever spoke to him on the subject."

So far as this case turns upon the evidence, it appears to my mind not only that the verdict does not shock the moral sense by its contrariety to the testimony, but that it is demanded by the burden of the proof. Here is one witness who swears particularly that he was never served, and that he gave no authority to any one to acknowledge for him. That he was not in fact served, and did not himself acknowledge service, is admitted, for the whole of the plaintiff's case is based upon a claim that the acknowledgment of "Doyal & Cook" was authorized. It is not pretended that there is any direct proof of this authority. Doyal denies

Dobbins *vs.* Dupree.

that he had any. Dupree asserts that he gave authority to no one, and Cook says he has no recollection of getting any authority from Dupree. This exhausts the testimony as to direct evidences. If the case stopped here it would be conclusively with Dupree and against the judgment. Nor is the indirect evidence sufficient, in our judgment, to establish the fact. What is that evidence? 1st. Some proof by the plaintiff, denied positively by the defendant, that he, the plaintiff, had informed defendant that he was about to sue, and that defendant desired it, and that he had talked with him about the judgment, after it was obained, during the war. 2d. Evidence going to show that Doyal had been Dupree's attorney in other cases, and that after Cook came into the office, those cases were managed in the name of Doyal & Cook. 3d. The fact that Dupree lived in the country, and that Doyal, at one of his visits home, had been applied to by the sheriff for the costs, and had perhaps seen the *fi. fa.* 4th. Cook's statement that though he did not remember the transaction, yet as it was in his hand-writing, he must have done it, and that he would not have so acted without having authority, or believing he had.

This is the plaintiff's case in its strongest light, and what does it amount to? The fact that a man or a firm is employed to represent one or a half dozen cases is assumed as evidence that the firm is authorized in a *given case to acknowledge service of the writ.* Friendship, familiarity, confidence, of one man towards another, is to be taken as evidence that he has authorized that other to act as his attorney in fact to acknowledge service of a writ. The fact that a man was informed that he should be sued, is used to show that he authorized a third party to acknowledge the writ. For myself, I have doubt if any of *this* evidence is relevant. If affirmative facts are to be established by such evidence, men's rights are very unsafe. Suppose it were attempted to prove, by such evidence, a man's authority to sign another's name to a deed, who would give *any* weight to it. It may be admissible in corroboration of other facts, but, of itself, it has hardly any value. Dobbins' testimony that he spoke to Dupree

Dobbins *vs.* Dupree.

during the war about the judgment *has* some value.   But when it is remembered that Dupree denies this, and that Dobbins did not mention it, in this shape, on the first trial, and especially when it is considered that Dobbins, knowing of the judgment, if he spoke of the debt at all, had that in his mind, and may now well think he used the word "judgment" in the conversation, when in fact he only spoke of the debt, this evidence is by no means convincing.   Mr. Dobbins is doubtless very honest in his conviction that he used the word judgment, and Mr. Dupree is doubtless equally convinced he did not.   Five or six years have elapsed ; either of them may be the mistaken one.   At best this leaves the mind in doubt as to which is right, and one can easily see that this is just such a matter as two honest men might differ upon, since each would be apt to remember the words accordingly as he understood the *status* of the case.

Cook's evidence is at last the hinge on which the case turns, and what is it?   He does not recollect the circumstance, though he recognizes his handwriting.   The proof is conclusive that Cook was the actor in the matter, and the real question is, did Cook have authority?   Is there such proof of this as would justify this Court in assuming that the jury who found this verdict must have acted from passion or prejudice?   The truth is, the proof of Cook's authority is very weak.   It consists wholly in Cook's statement that, as he did it, he must have, at least, *thought* he had authority.   He does not remember doing the act ; he does not recollect ever talking with Dupree on the subject, yet, as it is done, he must have, at the time, *thought*, at least, it was well done.   And this is paraded as evidence—Mr. Cook's convictions that, as he did it, he must, at least, have, at the time, thought himself authorized.   At last what is it but Mr. Cook's belief—not his recollection but his belief, founded not on any fact in the history of the case, but founded solely on his own estimate of the integrity of his own character.   But even this is again diluted by Cook's additional statement, that this opinion, which he says he must have had as to his authority, may have been founded on the authority which

Dobbins *vs.* Dupree.

Doyal gave him. Now it is admitted that Doyal gave him no authority to acknowledge for Dupree, and, at last, Cook's evidence amounts to this—that he *now believes* he must have *then thought* he had authority. And the case depends upon the opinion which the jury may have had of Mr. Cook's capacity at that time to form a correct judgment of what circumstances would authorize a lawyer to acknowledge service of a writ for a defendant, and as a criterion of that, he, himself, tells them that they are authorized to presume that he formed that opinion, from the conversation he had with Doyal.

As I have said, so far from the verdict being contrary to the evidence, it is in my judgment demanded by the evidence, and the jury have found just as by the evidence they ought to have found. At any rate this is true, unless there be some rule of law which makes this different from an ordinary case, and this, as I understand, is the ground occupied by the plaintiff.

2. We do not think there is any rule of law which makes this case a harder one to make out for the defendant than other cases turning upon proof. It is true there are English cases, and a case, Denton vs. Noyes, 6 John, 305, (Van Ness dissenting,) in which the doctrine is laid down that a Court, will not set aside a judgment on the ground that the attorney representing the defendant was not authorized to act. But our Code strikes all this doctrine out of the law. It is not applicable to our situation nor consistent with the state of our affairs. The acts of an attorney-at-law, within the scope of his duties as such, are, *prima facie*, held to be authorized, but on proof to the contrary, the Court will set them aside, and treat them as null. Code, sections 446, 447, 448.

Under the Code, therefore, the most that can be said for this case is, that the burden of proof is upon the defendant. He must prove the attorney not to have been authorized. That we think he has clearly done, first, by his own evidence, which is positive; and secondly, by the total failure of Doyal & Cook, both of whom are witnesses, to show the authority. Even without Dupree's evidence, the want of authority is

established about as strongly as any negative can be.   Here is the oath of the two attorneys, Doyal & Cook, the only persons, except Dupree, who can know the facts.   Doyal says positively *he* had no authority, and Cook is not able to say that he had, except by drawing an inference from the very act itself, though he adds that even that inference is worth but little, since his act might, as he says, have been done under authority from Doyal, which, as all admit, would have been no authority at all.

In my judgment, however, (though I believe the Chief Justice, as well as my brother WARNER, feel that the former decision of this Court is conclusive of a contrary doctrine,) the act of an attorney-at-law in acknowledging service of a writ, stands upon the same footing as the act of any other man.   It is not part of the duties of an attorney, and when questioned, it does not stand as *prima facie* authorized.   Our law requires the defendant to be served with a copy of the petition and process, and if the plaintiff sees fit to take a waiver of both the process and the copy, he must take care that he takes it from one who has authority.   This suit is not "regular upon the record."   The defendant does not appear to have been brought into Court in any of the methods provided by law.   He was not served, he did not acknowledge service.   A third person assumes to represent him, and signed his name to an acknowledgement of service.   In my judgment this was not the act of an attorney—an officer of Court, and is not entitled to the presumption which the Courts make in favor of the acts of its officers.   Even if Dupree had informed Cook that he expected to be sued, and that he wished him to defend the case, this would not have authorized Cook to waive process and acknowledge service. It was not an "attorney's" act as such.   It required special authority, and as it seems to me, stands upon the footing of other agents' acts.   It must be proven.   And it is to my mind rather an extraordinary stretch of the presumptions of law, to infer, in the first place, that an attorney is employed because he has appeared, and then to assume that, because he has appeared, his client is also presumed to have been proper-

ly in Court. It is presuming a fact, and then presuming from that fact another. This is going too far, and I do not give my assent to any such doctrine. "*Prima facie,* an attorney is to be presumed authorized properly to represent any cause he appears in," Code, section 448; but this clearly only covers his acts as an attorney. If he does any other act requiring special authority, his authority must be proven as in the case of other agents who act beyond the scope of their business.

Upon the whole we affirm the judgment of the Court below in refusing a new trial.

BROWN, C. J., concurring.

When an attorney-at-law acknowledges service of the writ, and at the trial term confesses judgment for the defendant, the presumption of law is that he had authority to do so, but that presumption is only *prima facie,* and may be rebutted by proof.

In a proceeding to set aside a judgment, on the ground that the defendant was never served, when it appears that an attorney of the Court acknowledged service, and confessed judgment for him, the burden of proof is upon the defendant, who moves to vacate the judgment, and he must make satisfactory proof that the attorney had no authority to represent him, or the judgment will not be disturbed. But if the evidence is conflicting, and the special jury have found for the movant, and the presiding Judge has refused to set aside the verdict, which was afterwards set aside by this Court, and there has been a new trial before another jury and another Judge, and the movant has strengthened his evidence on the second trial, and the verdict is again in his favor, and the presiding Judge on the second trial refuses to disturb it, and the evidence is so conflicting as to raise grave doubts which way the finding should have been, and no rule of law has been violated, this Court will not further interfere. It is the proper province of the jury to decide questions of fact, and where the evidence is conflicting, and there is sufficient

evidence to sustain the finding, this Court will be slow to disturb it.

WARNER, J., dissenting.

When it appeared from the record that a judgment had been entered against a defendant upon an acknowledgment of service on the writ, and confession of judgment by an attorney-at-law; that the defendant resided in the county, within one mile and a half from the Court-house where the judgment was rendered, and no motion having been made to set the judgment aside until the expiration of five years after it was rendered, and the attorney who made acknowledgment of service, and confessed the judgment, swears that he should not have done so *without authority*, and no just defense to the original contract being alleged as a reason for setting the judgment aside: *Held*, That under the 448th section of the Code, the acts of the attorney acknowledging service, and confessing judgment, were *prima facie* correct, and binding upon the defendant as to his authority to do so independently of his testimony upon that point, and that it is against the policy of the law, as well as against public policy, to allow the defendant to come into Court and set aside the judgment upon his *own evidence that he had not been legally served* in the original suit, upon the state of facts presented by the record, as was held by this Court, between the same parties in this case, in 36th Ga. Rep., 108.