ROBERT M. REYNOLDS v. W. J. FLEMING.

1. JUDGMENT, *Void.* A judgment resting upon the unauthorized appearance of an attorney at law is void.

2. UNAUTHORIZED APPEARANCE *of Attorney; Finding Without Support.* The appearance in an action by an attorney at law for a defendant whom he professes to represent, is presumed to be authorized until the contrary is shown, and it devolves upon the defendant impeaching this authority to show by positive proof that such appearance is invalid; and while all the presumptions are in favor of a finding of the trial court that the appearance of the attorney at law is binding upon the defendant, yet if the uncontradicted evidence establishes that the attorney ap-

peared for the defendant without his knowledge or authority, express or implied, and that the defendant never ratified the act of the attorney, and promptly disavowed it, such finding is without support.

*Error from Jackson District Court.*

ON the 20th day of September, 1880, *W. J. Fleming* commenced an action against W. M. C. Reynolds and *Robert M. Reynolds,* upon two promissory notes, one dated July 1, 1879, executed by W. M. C. Reynolds for $86.20, due three months after date, for work done on a dwelling house situated upon certain real estate in Jackson county, belonging to Robert M. Reynolds; the other dated July 9, 1879, executed by W. M. C. Reynolds for $359.80, due six months after date, for building material used in the construction of the dwelling house and improvements on the same real estate. The petition also set forth the filing of a mechanics' lien to secure the labor done and the material furnished, and prayed for a foreclosure of the lien and a sale of the real estate therein described. No service of summons, actual or constructive, was had upon Robert M. Reynolds; but on December 17, 1880, one J. S. Hopkins, an attorney at law of Holton, Jackson county, filed an answer in the action, and signed himself as attorney for R. M. Reynolds, which answer contained an admission that R. M. Reynolds was the owner of the real estate described in the petition, a general denial of all the allegations of the petition, and alleged that W. M. C. Reynolds was not the agent of Robert M. Reynolds at the time of the alleged contract for the furnishing of the material and work done, or at the time of the execution and delivery of the notes sued on; and also alleged that he had never been his agent to execute the notes, or to have any work or labor performed upon the premises, or to contract for the same. The answer further alleged that W. M. C. Reynolds had no right, title or interest to the lands described in the petition, except the right to cultivate the same for his own use, and to remain thereon as long as Robert M. Reynolds consented. On the 12th day of June, 1882, the action came on for trial. The plaintiff appeared in person and by his attorneys, Broderick

& Rafter; judgment was rendered in favor of the plaintiff against the defendant W. M. C. Reynolds for the sum of $519.60 and costs. It was further adjudged that the amount of the judgment was a lien upon the premises, and a decree was entered ordering the same to be sold to satisfy the judgment, interest, and costs. On November 6, 1882, R. M. Reynolds filed his motion to set aside and vacate the judgment as to himself, for the alleged reason that the court had no jurisdiction over his person or property, because, as he alleged, he had never been served with summons, either actual or constructive, and never entered any appearance. This motion was heard at the November Term of the district court for 1882, when the court made and filed the following findings of fact:

"1. On the 20th day of September, 1880, W. J. Fleming commenced an action to foreclose a mechanics' lien on the southeast quarter of the southeast quarter of section twenty-one (21), township five (5), range sixteen (16), and at the June term, 1882, he recovered a judgment against W. M. C. Reynolds, which judgment was declared a lien upon the lands (the legal title of said lands being in Robert M. Reynolds) for the sum of five hundred and nineteen $\frac{60}{100}$ dollars ($519.60), and a decree ordering the lands above described to be sold, and the proceeds of said sale to be applied on said judgment and the costs of this action.

"2. The said R. M. Reynolds was not served with summons in said action.

"3. He is a non-resident of the state of Kansas, and no service was obtained by publication as required by law.

"4. The said Robert M. Reynolds appeared in said action by John S. Hopkins, his attorney."

Thereupon the court held as a conclusion of law, that it had jurisdiction of the person of R. M. Reynolds. He excepted to the findings of fact and the conclusion of law, and also to the overruling of his motion to vacate the judgment, and brings the case here.

*Keller & Osterhold,* for plaintiff in error.

*Broderick & Rafter,* and *Hayden & Hayden,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The evidence introduced upon the hearing of the motion of Robert M. Reynolds to set aside and vacate the judgment rendered against him on the 12th of June, 1882, material for our consideration, is in brief, that John S. Hopkins, an attorney at law, in a conversation with Case Broderick, one of the attorneys of W. J. Fleming, about the time the action of Fleming against Reynolds was commenced, said to Broderick to save the expense of publication he thought that Robert M. Reynolds would enter an appearance; that Hopkins filed an answer in the case for W. M. C. Reynolds, and on December 17, 1880, filed another answer and signed himself as attorney for R. M. Reynolds; that he filed the answer for W. M. C. Reynolds, because the latter requested him to attend to the matter for him; that W. M. C. Reynolds told him to stop proceedings against his brother, but at the same time said he was not the agent for his brother and had no authority to contract for him; that after he filed the answer to which he attached his name as attorney for R. M. Reynolds, he sent a copy of it to R. M. Reynolds at Washington, D. C., but Reynolds never returned this copy; instead thereof he sent Hopkins a letter, in which he informed him he had not authorized his brother to act for him, and that he refused to have anything to do in the matter; that after Hopkins received this letter from Robert M. Reynolds, which was shortly after sending him a copy of the answer, and before the trial, he told Broderick he had nothing further to do with the case, and would not appear further for Robert M. Reynolds. Hopkins also testified that he said to Broderick before the trial, "He had better proceed to get service by publication." Broderick testified that "Hopkins told him the reason he had nothing further to do with the case was on account of fees, and he did not recollect that Hopkins said to him anything about publication subsequent to the filing of the answer."

W. M. C. Reynolds testified that he advised his brother Robert M. Reynolds of the commencement of the suit, soon

after it was begun. Robert M. Reynolds testified that he owned the real estate decreed to be sold to satisfy the judgment rendered on said June 12th, and that he resided at Washington, D. C.; had lived there for four years, but was in Kansas sometime in 1879; that he never employed W. M. C. Reynolds, his brother, to act as his agent in getting legal advice or counsel, or to employ an attorney, in the action of W. J. Fleming against himself; that he never filed an answer in the case, or authorized any one to make answer for him; that he utterly refused to make answer to the proceeding, and that the answer filed by Hopkins was done so without his authority, or knowledge, or consent; that when he received a letter from Hopkins inclosing a paper to be signed as an answer in the case, he promptly replied by saying he utterly refused to become a party to the proceedings, and refused to sign or return the paper; that he then notified Hopkins he could not recognize him as his attorney in the case, and since that time he has never written to him or spoken to him about the matter; that Hopkins has not presented his bill for alleged legal services, and that he had not paid him in any way whatever; that he was never notified by Hopkins that he had filed any paper in the proceeding as his agent or attorney, and at no time did Hopkins apprise him of his appearing for him, and that he did not understand an answer was filed in the case until apprised of it by Keller & Osterhold, attorneys at law, subsequent to the rendition of the judgment; that the first notice he had of the judgment against himself was the notice in a newspaper sent him by some person unknown, that the land was to be sold by the sheriff of Jackson county; that subsequently he received a copy of a like notice from his brother. The evidence of Robert M. Reynolds was introduced by deposition, and the statements therein contained, that the voluntary appearance by Hopkins in the action for said Reynolds was unauthorized, and that he had no knowledge of the filing of the answer in his behalf prior to the rendition of the judgment, were uncontradicted.

Applying the law, as we understand it, to the facts estab-

lished upon the hearing of the motion, the court below should have sustained the motion and vacated the judgment. In this state it is held that a judgment rendered without jurisdiction is void; that a personal judgment rendered without notice to the defendant is rendered without jurisdiction, and is consequently void; that a judgment void for want of notice may be set aside, on a motion made therefor by the defendant; and that this may be done in cases where it requires extrinsic evidence to show the judgment was rendered without notice and without jurisdiction. (Civil Code, § 575; *Butcher v. Bank*, 2 Kas. 70; *Railway Co. v. Streeter*, 8 Kas. 133; *Foreman v. Carter*, 9 Kas. 674; *Hanson v. Wolcott*, 19 Kas. 207; *Mastin v. Gray*, 19 Kas. 458.)

The authority of an attorney to appear for the party whom he professes to represent, is presumed until the contrary is shown; and it devolves upon the party impeaching the authority to show by positive proof that it is invalid. In some of the states, and in many of the early decisions, it is held that the appearance of an attorney for a defendant, even without authority, is deemed sufficient to give the court jurisdiction over his person; and upon such appearance, the court will proceed to judgment, and leave the defendant to his remedy against the attorney, unless the attorney is insolvent, or appears under suspicious circumstances, or through the procurement of the plaintiff. But the better authorities uphold the doctrine that any judgment rendered without jurisdiction, when assailed directly may be impeached, and that in doing so, anything contained in the record purporting to give or prove jurisdiction, as, the appearance of an attorney, may be contradicted by any evidence, extrinsic as well as intrinsic, and may be shown to be untrue and false. (*Mastin v. Gray*, supra.)

In this case the appearance of an attorney was impeached by a motion in the court rendering the judgment, and the motion is in the nature of a direct proceeding attacking it. If the attorney Hopkins appeared for R. M. Reynolds without his knowledge or authority, express or implied, he ought

not to be bound by the act, if never ratified, and promptly disavowed. As Robert M. Reynolds was never served by summons or by publication, the court had no jurisdiction of his person, unless jurisdiction was given by the appearance of the attorney; and if the appearance of the attorney was unauthorized, the judgment obtained thereon, within the latter decision, is void. Dillon, J., speaking for the court in *Harshey v. Blackmarr*, 20 Iowa, 161, said:

"Certain it is, however, that the party is entitled to relief when an unjust judgment, though a domestic one, has been rendered against him by fraud or collusion, or by the appearance of an unauthorized attorney, if the party seeks the relief by appeal or motion promptly, and has been guilty of no *laches.*"

In *Shelton v. Tiffin*, 47 U. S. 163 (6 How. 163), it was decided —

"Where a citizen of Virginia sued in the circuit court of Louisiana two persons jointly, one of whom was a citizen of Louisiana and the other of Missouri, and an attorney appeared for both defendants, the citizen of Missouri was at liberty to show that the appearance for him was unauthorized. If he showed this, he was not bound by the proceedings of the court, whose judgment, as to him, was a nullity."

In *Critchfield v. Porter*, 3 Ohio, 518, it was held —

"That when an attorney appears for a party in a suit in court without authority, the party is not concluded by his acts, but may be relieved against them."

And in the opinion supporting this declaration of law, it was said by Sherman, J.:

"The mischief that might follow from holding that the acts of the unauthorized attorney are conclusive upon the person for whom he appears, would induce the court to hesitate long before it would establish such a rule. It would in some degree subject the property of every individual in the community to the mistakes or malice of a particular class of men."

See for authorities of like tenor, *Lawrence v. Jarvis*, 32 Ill. 304; *Arnott v. Webb*, 1 Dill. 362; *Price v. Ward*, 1 Dutch. 225; *Pennywit v. Foote*, 27 Ohio St. 600; *Dobbin v. Dupree*,

39 Ga. 394; *Wiley v. Pratt*, 23 Ind. 628. See also *Wetherby v. Wetherby*, 20 Wis. 526; *Ferguson v. Crawford*, 70 N. Y. 253; *Clark v. Little*, 41 Iowa, 497; *Mastin v. Gray*, supra.

Counsel for Fleming contend that one co-defendant may employ an attorney for the other co-defendant, and the appearance by such an attorney for all will bind all. Certain Vermont cases are referred to as sustaining this doctrine. The cases are based upon the decision in *Scott v. Larkin*, 13 Vt. 112. Therein it is said:

"One defendant in an action *ex contractu* is permitted by the court to defend for his co-defendant. At common law and by our practice, except under the late statute, each defendant in actions *ex contractu* must defend for all. He may, in the absence of instructions to the contrary, employ counsel, enter appearance, plead and defend fully for all. And even where one defendant is defaulted, if the other defendant succeed in their defense, judgment must be arrested on the default."

This authority is not of any force under the statutes and practice in Kansas. In this state all contracts which are by the common law joint only, are joint and several, and suits may be prosecuted against any one or more of those who are liable, and judgments may be given for or against any one or more of several plaintiffs, and for or against any one or more of several defendants. Thus, here each defendant defends for himself and files his own answer regardless of his co-defendants, and if one defendant is defaulted, the success of a co-defendant does not arrest the judgment taken upon default.

It seems from the evidence, that the action of Hopkins, the attorney, was never ratified, and as his authority to appear was promptly disavowed as soon as notice thereof was brought to Robert M. Reynolds, we do not think the latter has waived any of his rights, or is estopped from assailing the void judgment. All of the presumptions are in favor of the finding of the trial court, that Robert M. Reynolds appeared in the action by John S. Hopkins, his attorney; but as the uncontradicted evidence is conclusive that the attorney filed the answer in the name of Robert M. Reynolds without his knowledge or authority, express or implied, the finding has

8 — 30 KAS.

no support in the record.   Robert M. Reynolds did not appear by-John S. Hopkins.   The pretended appearance was unauthorized.

The ruling and judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.

## ROBÉRT M. REYNOLDS v. W. J. FLEMING, et al.

*Opinion per Curiam:* The same questions are involved in this case as in *Reynolds v. Fleming,* just decided, and therefore the judgment will be reversed, and the cause remanded.