### BONNIFIELD et al. v. THORP.

(District Court, D. Alaska. January 25, 1896.)

#### No. 439.

1. AUTHORITY OF ATTORNEY—BURDEN OF PROOF.
The presumption is that an attorney appearing in court for a party has authority to do so; and, where the want of authority is questioned, the burden of proof is on the party attacking, and such want must be established by positive proof.

2. SAME—METHOD OF CHALLENGE.
Authority must be questioned by a direct attack, and may be challenged by a motion to dismiss the action, to compel the party to show authority, to vacate the appearance; and in cases where the validity of any order, judgment, or decree depends upon the jurisdiction of the court over the person of the party, acquired solely by appearance by attorney, the authority may be challenged on a motion to vacate the order, judgment, or decree.

3. SAME.
Where a party appears by attorney, all the proceedings in court must be conducted, and all acts affecting the remedy, and not the cause, of

action, incidental or necessary to the prosecution or management of the suit, must be done, by the attorney.

4. SAME—POWER TO STIPULATE.
    A stipulation extending time to answer is one of such proceedings; and, if made by a party who is represented in court by an attorney, it should be disregarded.

5. JUDGMENT BY DEFAULT—VACATING.
    Motions to vacate defaults in this court are within the provisions of the statutes of Oregon (Hill's Code, pp. 242, 243, § 102), which provide that the court may, in its discretion, "relieve a party from a judgment, order, or other proceeding, taken against him through his mistake, inadvertence, surprise or excusable neglect."

6. SAME.
    *Held*, that the showing made by the defendant herein is not sufficient to warrant the court in vacating the default, under this statute.

(Syllabus by the Court.)

This is an action at law brought to recover certain rents and profits alleged to be due the plaintiffs from the defendant under a certain indenture of lease of the Aurora lode claim, United States survey No. 41, situated on the Silver Bow basin, Harris mining district, Alaska. The complaint was filed on the 15th day of April, 1895, and personal service of the summons was had on the next day, and on the 4th day of May, 1895, defendant entered an appearance by his attorneys. On the 23d of the same month a general demurrer was entered, which, after hearing, was on the 3d day of December, 1895, overruled, and an order entered giving the defendant 20 days to answer. On failure to so answer, an order of default was entered against him on the 26th day of December, 1895. On December 28th, motion to vacate the default was served; and by stipulation made January 8, 1896, the motion was submitted, on affidavits and the papers, records, and proceedings in the cause.

J. F. Maloney and Johnson & Heid, for plaintiff.
Bostwick & Crews, for defendant.

DELANEY, District Judge. While the courts are vested with a large discretion in determining applications of this character, its exercise must be confined to the limits prescribed by statute, which, so far as this court is concerned, are laid down in section 102, pp. 242, 243, Hill's Code Or. This section provides that the court may, in its discretion, "relieve a party from a judgment, order or other proceeding, taken against him through his mistake, inadvertence, surprise, or excusable neglect." The only testimony submitted in support of the application is the affidavit of one of the attorneys for the defendant. The allegations therein set forth are, substantially, to the effect that he was under the impression that the time to answer was 60 days, but on examination of his office docket on the morning of the 23d of December, 1895, he learned that the answer was due that day; that he went to the office of Johnson & Heid, the attorneys of record for the plaintiffs, to get an extension of time to answer, but found neither of them in their office when he called, at 10 o'clock a. m.; that he was engaged in his office the balance of said day, and did not have an opportunity to see said attorneys

until the next morning, when he saw Johnson going to the Juneau wharf with his hand baggage; that he spoke to him, and mentioned the fact that the time to answer had expired, and wanted an extension, and that Johnson referred him to Heid; that he soon after prepared a stipulation, and went to Johnson & Heid's office, and after he had stated that his client had been unexpectedly called to the state of Washington, and that he could not prepare an answer without his presence, the attorneys for the plaintiffs then and there refused to extend the time; that affiant then stated that, unless they gave him time to answer by stipulation, it would compel him to go to Sitka for an order of court for such extension; that thereafter, about 2:30 o'clock p. m., he saw the plaintiff Bonnifield, who signed, with defendant's attorneys, a stipulation extending the time until the 1st of March, 1896; that it was then too late to reach the mail steamer, as the ferryboat had gone to Douglas Island; that his reasons for having Bonnifield sign the stipulation in person was that he had discharged his attorney, Malony, and no notice of substitution of any other attorney had been given; that, upon the argument of the demurrer, said Bonnifield was unrepresented by counsel, Johnson & Heid appearing for plaintiff Heid; that he is informed and believes that they have no authority to appear for Bonnifield, and that any action taken by them for him is unauthorized; that they have never advised defendant or his attorneys that they were authorized to act for Bonnifield, but, on the other hand, stated in open court that they were not so authorized; that the default was taken through mistake, inadvertence, and neglect, as above fully set forth; that he relied upon the stipulation with Bonnifield, and therefore did not go to Sitka to get an extension, and also relied upon the fact that the attorneys for plaintiff Heid, knowing full well that he intended to answer, would not attempt to take a default or judgment. He also states that the defendant has fully stated the facts in the case to affiant, and from such statement affiant believes that defendant has a good and substantial defense on the merits. These allegations comprise all the testimony submitted by the defendant that is pertinent to the motion under consideration. Counter affidavits were filed by each of the plaintiffs' attorneys, denying the allegation that they are not the attorneys for plaintiff Bonnifield, and denying that they stated in open court that they were not authorized to represent him. The paramount question to be determined from this testimony, is, does it show such mistake, inadvertence, surprise, or excusable neglect as will warrant the court to set aside the default? Incidentally to this, the questions as to whether plaintiff Bonnifield had an attorney of record when the stipulation of the 24th of December, 1895, extending the time, was made, and the effect of such stipulation, are presented. The incidental questions will be first disposed of.

The summons and complaint both bear the signatures of Johnson & Heid and J. F. Malony, plaintiffs' attorneys, and the complaint is verified by Bonnifield. Service of a notice of appearance for the defendant by his attorneys is admitted May 4, 1895, by "J. F. Malony and Johnson & Heid, Plaintiffs' Attorneys," as is also an admission

of service, of same date, of notice of motion to make more definite and certain. Service of the demurrer is admitted in the same manner, and in all the proceedings with reference to a writ of attachment and its discharge, subsequently occurring in the cause, notices are addressed by defendant's attorneys to "J. F. Malony and Messrs. Johnson & Heid, Attorneys for Plaintiffs." On the 19th day of November, 1895, the plaintiff Bonnifield served a written notice upon Malony, discontinuing his services, which, however, was not filed until the 10th day of January, 1896, the day upon which all the papers having reference to this motion were filed. The record discloses no changes as to Johnson & Heid, nor any proceedings for any change at all, as provided by statute (Hill's Code, pp. 688, 689, §§ 1042, 1043). Upon the record, then, as it appeared upon the 26th day of December, 1895 (the day the default was entered), the same attorneys who signed the original summons and complaint were still the attorneys for the plaintiffs. An inference might be suggested from the affidavit submitted in behalf of the defendant that Malony was the attorney for the plaintiff Bonnifield only, and that Johnson & Heid were the attorneys for Heid only. The rule, however, is too well settled to need the citation of any authorities, that a separate appearance must be so stated, and a general appearance for plaintiffs and defendants is an appearance by all the attorneys jointly, for all the clients; so that, upon the record in the case, whatever the status of Malony may have been after he had been discharged by Bonnifield, Johnson & Heid were the attorneys of record for the plaintiffs upon the 24th day of December, 1895, when the stipulation in question was signed by Bonnifield.

There is no principle of practice better settled in our American law than that an appearance in court by an attorney for a client carries with it the presumption of authority to appear. This rule was early laid down by Chief Justice Marshall, speaking for the supreme court of the United States, in the case of Osborn v. Bank, 9 Wheat. 739. The learned chief justice there says:

"Certain gentlemen, first licensed by the government, are admitted by order of court to stand at the bar, with a general capacity to represent all the suitors in the court. The appearance of any one of these gentlemen in a cause has always been received as evidence of his authority; and no additional evidence, so far as we are informed, has ever been required. This practice, we believe, has existed from the first establishment of our courts, and no departure from it has been made in those of any state or of the Union."

From the multitude of authorities affirming the rule here stated, the following have been collated: Hill v. Mendenhall, 21 Wall. 453; Insurance Co. v. Oakley, 9 Paige, 496; Kelso v. Steiger (Md.) 24 Atl. 18; Steffe v. Railroad Co. (Mass.) 30 N. E. 1137; Bank v. Fellows, 28 N. H. 302; Taylor v. New Orleans, 41 La. Ann. 891, 6 South. 723; Norberg v. Heineman, 59 Mich. 210, 26 N. W. 481; Reynolds v. Fleming, 30 Kan. 106, 1 Pac. 61; Vorce v. Page, 28 Neb. 294, 44 N. W. 452; Garrison v. McGowan, 48 Cal. 592; Carter v. Koshland, 12 Or. 292, 8 Pac. 556.

The burden of proof rests upon him who denies the authority. Weeks, Attys. § 344. The presumption of authority is not overcome

by affidavit of opposing counsel, challenging authority, if the attorney appearing presents counter affidavit, asserting authority. Ring v. Glass Co., 46 Mo. App. 374. And allegations of belief are not sufficient. Facts must be stated. Valle v. Picton, 91 Mo. 207, 3 S. W. 860.

It may be observed here that the absence of any testimony on the part of Bonnifield concerning this matter is quite significant, as it appears that he was in Juneau on the 24th of December, 1895, when he signed the stipulation.

The practice is also well settled that the authority for an attorney to appear cannot be called into question except by a motion directly for that purpose, based upon affidavits, showing, in the first instance, prima facie a want of authority; and, upon the hearing, such want must be established by clear and positive proofs. The proceeding may be by motion to vacate the appearance, to dismiss the action, or for an order requiring authority to be shown; and, in cases where the validity of an order, judgment, or decree depends on the jurisdiction of the court over the person of a party, acquired solely by an appearance of attorneys, the authority of such attorney may be attacked upon a motion to vacate the order, judgment, or decree. In the absence of some such proceeding, directly challenging the authority, the court will not hear or inquire into the question of the authority of the attorney for his appearance. Hollins v. Railroad Co. (Sup.) 11 N. Y. Supp. 27; Insurance Co. v. Pinner, 43 N. J. Eq. 52, 10 Atl. 184; Hill v. Mendenhall, supra; McKiernon v. Patrick, 4 How. (Miss.) 336; Howe v. Anderson (Ky.) 14 S. W. 216; Reynolds v. Fleming, supra; Williams v. Canal Co., 13 Colo. 469, 22 Pac. 806, affirmed in Dillon v. Rand, 15 Colo. 372, 25 Pac. 185; Winters v. Means, 25 Neb. 241, 41 N. W. 157; Turner v. Caruthers, 17 Cal. 432; People v. Mariposa Co., 39 Cal. 683.

While, under the authorities just cited, this question is not regularly presented, I have been inclined to pass upon it for the purpose of settling the future practice of this court; and the conclusion reached is that the appearance by Johnson & Heid, as plaintiffs' attorneys, upon the summons and complaint, is an appearance for both plaintiffs, and they ever since have been, and now are, such attorneys.

This brings us to the consideration of the stipulation made on the 24th of December, 1895, by and between Bonnifield, as plaintiff, and the attorneys for the defendant, extending the time to answer. The court has no doubt whatever that this stipulation must be disregarded. The line of demarkation between the respective rights and powers of an attorney and client is clearly defined. The cause of action, the claim or demand sued upon, the subject-matter of the litigation, are within the exclusive control of the client; and the attorney may not impair, compromise, settle, surrender, or destroy them without the client's consent. Holker v. Parker, 7 Cranch, 436; Bates v. Voorhees, 20 N. Y. 525; Whitehall Tp. v. Keller, 100 Pa. St. 105; Dickerson v. Hodges, 43 N. J. Eq. 45, 10 Atl. 111; Moulton v. Bowker, 115 Mass. 40; Crotty v. Eagle's Adm'r (W. Va.) 13 S. E. 59; Mitchell v. Cotton, 3 Fla. 136; Weathers v. Ray, 4 Dana, 474; Peters v. Lawson, 66 Tex. 336, 17 S. W. 734; Repp v. Wiles (Ind. App.) 29 N.

E. 441; Martin. v. Insurance Co. (Iowa) 52 N. W. 534; Herriman v. Shomon, 24 Kan. 387; Stoll v. Sheldon, 13 Neb. 207, 13 N. W. 201. But all the proceedings in court to enforce the remedy, to bring the claim, demand, cause of action, or subject-matter of the suit to hearing, trial, determination, judgment, and execution, are within the exclusive control of the attorney. "All acts, in and out of court, necessary or incidental to the prosecution or management of the suit, and which affect the remedy only, and not the cause of action," are to be performed by the attorney. Moulton v. Bowker, supra; State v. Hawkins, 28 Mo. 366; Cheever v. Mirrick, 2 N. H. 376; Anon., 1 Wend. 109; Webb v. Dill, 18 Abb. Prac. 264; Hughes v. Hollingsworth, 1 Murph. (N. C.) 146; Thompson v. Pershing, 86 Ind. 304; Wilson v. Spring, 64 Ill. 16; Smith v. Mulliken, 2 Minn. 319 (Gil. 273); Bank v. Geary, 5 Pet. 99. A footnote to the latter case, published in Book 8 of the Lawyers' Co-Operative Company's Edition of the United States Supreme Court Reports (page 60), presents a voluminous citation of authorities as to what acts an attorney may perform in the progress of an action.

The rule now under consideration has been followed by the courts of the Pacific states, and the supreme court of California has declared the rule in the following language:

"A party to an action may appear in his own proper person or by attorney, but he cannot do both. If he appears by attorney, he must be heard through him; and it is indispensable to the decorum of the court and the due and orderly conduct of a cause that such attorneys shall have the management and control of the action, and his acts go unquestioned by any one except the party he represents. So long as he remains the attorney of record, the court cannot recognize any other as having the management of the case. If the party, for any cause, becomes dissatisfied with his attorney, the law points out a remedy. He may move the court for leave to change his attorney. Until that has been done, the client cannot assume control of the case. While there is an attorney of record, no stipulation as to the conduct or disposal of the action should be entertained by the court, unless the same is signed or assented to by such attorneys. Such a rule is not only indispensable to the orderly conduct of the cause, but is likewise a safeguard to the client against the intrigues of his adversary. Moreover (without being understood as making any reference to the present case), it is proper to add that to entirely ignore the attorney of record, and enter, without his consent, into a secret negotiation with his client touching the management of his case, is unbecoming the dignity of the profession, and is destructive of that courtesy which is due from one member to another." Commissioners v. Younger, 29 Cal. 147.

The doctrine here laid down has been repeatedly reaffirmed by the supreme court of that state. The rule now under consideration has also received the weight of legislative sanction. The statutes of Oregon provide "that where a party appears by attorney, the written proceedings must be in the name of the attorney, who is the sole representative of his client as between him and the adverse party." Hill's Code, p. 680, § 1032.

A stipulation extending the time to answer is certainly one of the proceedings in or incident to the progress of a cause pending in court; and, as Bonnifield was represented by attorneys when the stipulation was made, his action cannot be recognized by the court. Additional force is given to the importance of this rule when it is

considered that Bonnifield has a coplaintiff. The action on the part of the plaintiffs is joint, and, upon the cause of action set out in the complaint, both must recover, or neither. The right to a default on the part of the plaintiffs was a vested one on the 24th day of December, 1895; and on that day one plaintiff refuses to waive the right, and the other stipulates to do so. Who is to have his way? This dilemma exemplifies in a striking manner the inextricable confusion into which judicial proceedings would be thrown if clients, and not their attorneys, were permitted to control and manage causes in court. The stipulation, therefore, must be held for naught.

Upon the main question, the court is not satisfied, from the showing presented, that there is such mistake, inadvertence, surprise, or excusable neglect as will justify the vacation of this default. It appears from the affidavits submitted on the part of the defendant that, although the defendant's attorneys had been under the impression that they had 60 days to answer, they did learn from their office docket on the morning of the 23d of December, 1895, that the time to answer expired that day. After learning this, they could not have labored under any mistake, inadvertence, or surprise concerning the time to answer. The only step taken that day to guard against the default was a call at the office of the plaintiffs' attorneys at 10 o'clock that forenoon, and they were not found. About 10 o'clock the next morning, and after the right to a default had accrued, the affiant met Mr. Johnson on the street, with his hand baggage, going to the Juneau wharf, apparently on his way to take the regular mail steamer, which was then at Douglas Island, bound thence for Sitka. Here a conversation took place concerning an extension of time, and Mr. Johnson referred the affiant to Mr. Heid. A call on Mr. Heid was immediately made, and the extension was refused. Affiant testifies that he stated at this time that, unless an extension was granted, he would be compelled to go to Sitka, and ask the court for further time; but nothing further was done except to obtain the stipulation from Bonnifield about 2:30 o'clock p. m., at which time it appears the steamer was still at Douglas Island. Although the ferry had then left Juneau, there certainly must have been an opportunity between 10 o'clock a. m. and 2:30 o'clock p. m. for counsel for defendant to reach the steamer. Mr. Johnson reached her after the conversation on the street occurred, came to Sitka by her, and on the 26th of December, 1895, took his order for default. The court feels constrained to add that a like diligence on the part of counsel for defendant would have prevented the entry of the order.

It further appears from the showing presented in behalf of the defendant that he had fully stated the facts in the case to his attorneys, and upon such statement they had advised him that he had a good and substantial defense on the merits. Attorneys for the defendant were, then, in the position, on the 23d day of December, to prepare, and, in the absence of their client, verify, and serve, an answer. That counsel were engaged in their office, or did not have an opportunity to see the attorneys for the plaintiff, is not a sufficient excuse. Neither can any reliance which defendant's attorneys may have placed in any knowledge of opposing counsel as to de-

fendant's intention to answer be considered. Defendant's attorneys may have been, and doubtless were, disappointed that their request for an extension was refused; and, under the amenities and courtesies which are usually exchanged among the gentlemen of the bar, it would seem that the request might have been granted. But the question for the court to determine is one of law, and not of professional ethics; and, on the showing made by the defendant, the case is not one of such mistake, inadvertence, surprise, or excusable neglect as the law contemplates. Butler v. Morse (N. H.) 23 Atl. 90; Craig v. Wroth, 47 Md. 281; Skinner v. Terry, 107 N. C. 103, 12 S. E. 118; Landa v. McGehee (Tex. Sup.) 19 S. W. 516; Railroad Co. v. Flinn (Ind. App.) 28 N. E. 201; Devenbaugh v. Nifer (Ind. App.) 29 N. E. 923; Elton v. Brettschneider, 33 Ill. App. 355; Elder v. Bank, 12 Kan. 242; Haggin v. Lorentz, 13 Mont. 406, 34 Pac. 607; Thomas v. Chambers, 14 Mont. 423, 36 Pac. 814; City of Helena v. Brule, 15 Mont. 429, 39 Pac. 456, 852; Importing Co. v. Hogan (Mont.) 41 Pac. 135; Blaine v. Briscoe, Id. 1002; Jenkins v. Telegraph Co. (Cal.) 31 Pac. 570; Shearman v. Jorgensen, 106 Cal. 483, 39 Pac. 863; Harbaugh v. Water Co. (Cal.) 41 Pac. 792; Myers v. Landrum, 4 Wash. 762, 31 Pac. 33; Haynes v. B. F. Schwartz Co., 5 Wash. 433, 32 Pac. 220; Deering v. Quivey, 26 Or. 566, 38 Pac. 710.

It follows from these views that the motion to vacate the default must be denied, and the plaintiffs will have judgment in accordance with the demand of the summons and complaint.